IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

DIVISION II

| | |
|---|---|
| In the Matter of the Detention of:<br><br>MARCUS ABBE, aka JAZMINE ANNE JAZPER,[†]<br><br>        Appellant. | No. 59123-5-II<br><br>PUBLISHED OPINION |

  CHE, J. — This case presents two questions concerning chapter 71.09 RCW proceedings. First, as a matter of first impression in Washington, this case raises the question whether a person committed under chapter 71.09 RCW can propose their own less restrictive alternative (LRA) placement under RCW 71.09.090(2)(a) when the Department of Social and Health Services' (DSHS) secretary designee has authorized them to petition for conditional release under RCW 71.09.090(1)(b). Second, it raises the question whether a trial court may grant a State's motion for summary judgment under CR 56 in chapter 71.09 RCW proceedings.

  We hold that, pursuant to the plain language of RCW 71.09.090, a committed person's petition for conditional release proceeds under subsection (1)(b) when the person has the secretary designee's authorization to petition for conditional release to an LRA. Additionally, we hold that (1) the summary judgment procedure was appropriate under these circumstances, (2) the State's sought after remedy did not render CR 56 inapplicable, and (3) the appellant in

---

[†] The appellant is now known as "Jazmine Anne Jazper".

No. 59123-5-II

this case fails to show that a continuance should have been granted below. Accordingly, we affirm.

FACTS

A.     *RCW 71.09.090*

Every year, DSHS must complete an evaluation of the "mental condition" of those persons committed into DSHS's control, care, and treatment under chapter 71.09 RCW. RCW 71.09.070(1), .060(1). DSHS must also report whether the committed person continues to meet the definition of a sexually violent predator (SVP), whether conditional release to an LRA is in their best interest, and whether conditions could be imposed that would adequately protect the community. RCW 71.09.070(2). The legislature has declared that these requirements are "necessary for the immediate preservation of the public peace, health, or safety, or support of the state government and its existing public institutions." LAWS OF 2015, ch. 278, § 4.

In 2021, the legislature passed SB 5163, which amended the procedures for transitioning SVPs from total confinement into the community and sought to "increase community safety through successful transition." LAWS OF 2021, ch. 236, § 1. Effective July 2021, RCW 71.09.090 provides the following regarding petitions for conditional release:

(1) . . . .

(b) If the secretary determines that the person's condition has so changed that conditional release to a less restrictive alternative is in the best interest of the person and conditions can be imposed that adequately protect the community, then the secretary shall authorize the person to petition the court for conditional release to a less restrictive alternative. Upon receipt of the petition, the court shall order the department to identify a less restrictive alternative placement that satisfies RCW

2

71.09.092 (1) through (4).[1] Once identified, notice of the placement shall be filed with the court and served upon: The prosecuting agency responsible for the initial commitment; any person or persons identified in RCW 71.09.140(2)(a)[2] who have opted to receive notifications under this chapter; and the person and his or her counsel. If the department cannot identify a placement available to the person that satisfies RCW 71.09.092 (1) through (4) within 90 days, the department shall provide a written certification to the court, the prosecuting agency responsible for the initial commitment, and the person and his or her counsel, detailing the efforts of the department to identify a qualifying placement. Upon the department's certification, the person may propose a placement that satisfies RCW 71.09.092 (1) through (3). After a less restrictive placement has been proposed by either the department or the person, the court shall within 45 days order a hearing.

(2)(a) Nothing contained in this chapter shall prohibit the person from otherwise petitioning the court for conditional release to a less restrictive alternative or unconditional discharge without the secretary's approval. The secretary shall provide the committed person with an annual written notice of the person's right to petition the court for conditional release to a less restrictive alternative or unconditional discharge over the secretary's objection. The notice shall contain a waiver of rights. The secretary shall file the notice and waiver form and the annual

---

[1] RCW 71.09.092 provides various requirements that the trial court must find before entering an order directing conditional release to an LRA, including that:

(1) The [committed] person will be treated by a treatment provider who is qualified to provide such treatment in the state of Washington under chapter 18.155 RCW; (2) the treatment provider has presented a specific course of treatment and has agreed to assume responsibility for such treatment and will report progress to the court on a regular basis, and will report violations immediately to the court, the prosecutor, the supervising community corrections officer, and the superintendent of the special commitment center; (3) housing exists in Washington that complies with distance restrictions, is sufficiently secure to protect the community, and the person or agency providing housing to the conditionally released person has agreed in writing to accept the person, to provide the level of security required by the court, and immediately to report to the court, the prosecutor, the supervising community corrections officer, and the superintendent of the special commitment center if the person leaves the housing to which he or she has been assigned without authorization; (4) if the department has proposed housing that is outside of the county of commitment, a documented effort was made by the department to ensure that placement is consistent with fair share principles of release . . .

[2] Under RCW 71.09.140(2)(a), notice of an LRA placement must be served upon "[t]he victim or victims of any sexually violent offenses for which the person was convicted in the past or the victim's next of kin if the crime was a homicide."

report with the court. If the person does not affirmatively waive the right to petition, the court shall set a show cause hearing to determine whether probable cause exists to warrant a hearing on whether the person's condition has so changed that: (i) He or she no longer meets the definition of a sexually violent predator; or (ii) conditional release to a proposed less restrictive alternative would be in the best interest of the person and conditions can be imposed that would adequately protect the community.

RCW 71.09.097, a statute created through SB 5163, states, "[i]n accordance with RCW 71.09.090 . . ., [DSHS] shall have the primary responsibility for developing a less restrictive alternative placement." RCW 71.09.097(1).

B.      *Jazper's 2023 Petition*

In 2001, a trial court found Jazper to be an SVP and civilly committed her to DSHS's custody at the Special Commitment Center on McNeil Island for control, care, and treatment under chapter 71.09 RCW.

Upon completing its annual evaluation of Jazper's condition in September 2021 and again in September 2022, DSHS's secretary designee authorized Jazper to petition for conditional release to an LRA under RCW 71.09.090(1)(b). In its authorization, the secretary designee identified the Pierce County Secure Community Transition Facility (SCTF) as the proposed LRA placement.

In May 2023, Jazper petitioned the trial court for conditional release to an LRA. In her petition, Jazper identified two bases for her petition: RCW 71.09.090(1)(b) and RCW 71.09.090(2)(a). Jazper proposed her own LRA placement at a privately-owned location. She requested that the court schedule a trial on her proposed LRA placement. The State agreed that Jazper was permitted under RCW 71.09.090(1)(b) to petition for an LRA through the secretary designee's authorization, but argued that, with the secretary designee's authorization, Jazper

could not petition under RCW 71.09.090(2)(a) and request a trial on her proposed placement. The trial court ordered DSHS to propose an LRA satisfying the requirements of RCW 71.09.092(1) through (4) but reserved on the question whether Jazper could propose her own LRA.

In August, within 90 days after the trial court's order, DSHS proposed an LRA plan that would place Jazper at SCTF and asserted that its proposed plan met the statutory requirements. Jazper disagreed with the proposed plan, specifically with the proposed placement at SCTF. At the State and Jazper's request, the trial court set a trial date, as well as an earlier hearing date to determine whether DSHS or Jazper's plan would be at issue at trial.

In October, Jazper filed a "Waiver of Right to Show Cause" with the trial court, asserting that she was waiving her right to petition based on the secretary designee's authorizations and exercising her right to "independently petition for conditional release with my own probable cause showing." Clerk's Papers (CP) at 268. After a hearing on which plan would be litigated at trial, the trial court denied Jazper's proposed LRA plan and ordered DSHS's proposed plan to be the one at issue in the conditional release trial. In its written ruling, the court made the following conclusions of law:

> 3.    Because the secretary authorized [Jazper] to petition for conditional release, [Jazper]'s petition for conditional release is pursuant to RCW 71.09.090(1)(b), not RCW 71.09.090(2).
>
> 4.    RCW 71.09.090 does not permit [Jazper] to alternatively petition for conditional release pursuant to RCW 71.09.090(2) because [Jazper] is not "without" the secretary's authorization.
>
> 5.    When the Legislature passed SB 5163, it explicitly vested DSHS with primary responsibility for developing an LRA placement. RCW 71.09.097(1). Under the plain language of RCW 71.09.090(1)(b), [Jazper] may only propose their

own LRA placement if DSHS is unable to develop an LRA placement within ninety days that satisfies the requirements of RCW 71.09.092(1)-(4).

6.      Because DSHS did timely propose an LRA placement in compliance with RCW 71.09.090(l)(b) here, [Jazper] may not propose her own LRA placement.

CP at 302. Jazper moved for reconsideration, but the trial court denied her motion.

In November, Jazper moved to compel DSHS to produce certain discovery after serving it with two subpoenas duces tecum. Jazper sought, among other things, discovery related to conditions at SCTF, which she argued were relevant to whether conditional release to SCTF was in her best interest and would allow for conditions to adequately protect the community.

Before the trial court ruled on Jazper's motion to compel, the State filed a motion for summary judgment, requesting that Jazper be conditionally released to the proposed LRA with placement at SCTF. The State argued that, based on the anticipated evidence at trial, the State could not meet its burden of proving that an LRA was not in Jazper's best interest and that no conditions could be imposed to adequately protect the community. The State concluded it could not meet its burden of proof because the State anticipated that its own expert would opine that conditional release to the proposed LRA plan would be in Jazper's best interest and that conditions could be imposed to adequately protect the community. The State also argued that Jazper offered no testimony contradicting the State's expert's opinions about DSHS's proposed placement.

Before considering the State's motion for summary judgment, the trial court granted Jazper's motion to compel discovery and ordered DSHS to produce documents by a deadline of five days before the court was set to hear the State's summary judgment motion. Jazper had also requested to have a week after receiving the subpoenaed documents to prepare for depositions of

6

DSHS's agents. The trial court reserved ruling on setting a date for depositions until the parties had sufficient time to review DSHS's records and to confer about dates and times for the deposition.

Jazper then responded to the State's summary judgment motion and argued, among other things, that the State was not entitled to summary judgment beyond that provided for in RCW 71.09.094.[3] Jazper also argued that there were genuine issues of material fact and that depositions were pending for some witnesses, which were anticipated to "detail[] the current conditions of SCTF and the services available to residents at SCTF." CP at 545. Jazper also noted that, "[d]iscovery for DSHS witnesses is not complete and depositions are pending." CP at 547. Jazper stated that she reasonably anticipated "identifying SCTF operations and conditions relating to staffing levels, medical services, medication management, chaperone services, employment opportunities, supervision, and programming services not in the best interest of [Jazper] and could affect community safety." CP at 547. Jazper requested that the trial court deny the State's summary judgment motion but did not expressly request a continuance of the motion based on any outstanding discovery. Jazper made one reference to CR 56(f) at the hearing on the State's summary judgment motion, stating, "And the import of the additional discovery, Your Honor—and I will just cite that CR 56(f) allows the Court, where there is

---

[3] RCW 71.09.094(1) provides:

> Upon the conclusion of the evidence in a hearing held pursuant to RCW 71.09.090 or through summary judgment proceedings prior to such a hearing, if the court finds that there is no legally sufficient evidentiary basis for a reasonable jury to find that the conditions set forth in RCW 71.09.092 have been met, the court shall grant a motion by the state for a judgment as a matter of law on the issue of conditional release to a less restrictive alternative.

7

pending discovery, to delay the decision on the motion for summary judgment and we are in this position exactly because of the delay with the discovery for SCTF."  Rep't of Proc. (RP) (Dec. 13, 2023) at 93.

Five days after the deadline for the State to produce discoverable documents to Jazper, the trial court held a hearing on the State's motion for summary judgment, granted the motion in the State's favor, and struck the trial date.

Jazper sought discretionary review of the trial court's order granting summary judgment. A commissioner of this court granted discretionary review and later denied the State's motion to modify that ruling.  Ruling Granting Discr. Rev., (Dec. 16, 2024); Ord. Den. Mot. to Modify (Feb. 10, 2025).

## ANALYSIS

### I.  RCW 71.09.090

Jazper argues that, despite the secretary designee authorizing her to petition for conditional release to a specific LRA, Jazper should have been permitted to pursue her own proposed LRA placement.  She asserts that RCW 71.09.090(2)(a)'s language that "'*[n]othing* . . . shall prohibit the person from otherwise petitioning the court for conditional release,'" provides her with an unqualified right to petition with her own proposed placement and the option to waive a right to petition based on the secretary designee's authorization.  Br. of Appellant at 13. We disagree.

A.    *Legal Principles*

We review de novo questions of statutory interpretation.  *In re Det. of Martin*, 163 Wn.2d 501, 506, 182 P.3d 951 (2008).  Our primary purpose in interpreting a statute is "'to ascertain

and carry out the intent of the Legislature.'" *In re Det. of Anderson*, 185 Wn.2d 79, 85, 368 P.3d 162 (2016) (quoting *Martin*, 163 Wn.2d at 506). Through this inquiry, we rely first on the statute's plain language to determine legislative intent, including considering "'the text of the provision in question, the context of the statute in which the provision is found, related provisions, amendments to the provision, and the statutory scheme as a whole.'" *Branson v. Wash. Fine Wine & Spirits, LLC*, 5 Wn.3d 289, 294, 574 P.3d 1031 (2025) (quoting *Ass'n of Wash. Spirits & Wine Distribs. v. Wash. State Liquor Control Bd.*, 182 Wn.2d 342, 350, 340 P.3d 849 (2015)). If the plain language is unambiguous—subject to only one reasonable interpretation—our inquiry ends. *Branson*, 5 Wn.3d at 294; *see also Martin*, 163 Wn.2d at 508.

Because the civil commitment statutes involve the deprivation of liberty, we strictly construe them. *In re Det. of Marcum*, 189 Wn.2d 1, 8, 403 P.3d 16 (2017). "Strict construction requires that, 'given a choice between a narrow, restrictive construction and a broad, more liberal interpretation, we must choose the first option.'" *In re Det. of Hawkins*, 169 Wn.2d 796, 801, 238 P.3d 1175 (2010) (quoting *Pac. Nw. Ann. Conf. of United Methodist Church v. Walla Walla County*, 82 Wn.2d 138, 141, 508 P.2d 1361 (1973)).

B. *A Petition for Conditional Release To an LRA Based on RCW 71.09.090(2)(a) Is Unavailable To a Committed Person When the Secretary or Their Designee Has Authorized Submission of a Petition for Conditional Release*

The statute at issue, RCW 71.09.090, sets out two bases for a conditional release petition and corresponding procedures depending on the petition's basis.

First, under RCW 71.09.090(1)(b), the secretary must authorize a committed person to petition the trial court for conditional release to an LRA "[i]f the secretary determines that the

9

person's condition has so changed that conditional release to a[n LRA] is in the best interest of the person and conditions can be imposed that adequately protect the community." Once the trial court receives a petition under this subsection, the court must order DSHS to identify an LRA placement satisfying RCW 71.09.092(1) through (4). RCW 71.09.090(1)(b). If no such placement is identified within 90 days, then the committed person "may propose a placement that satisfies [statutory requirements]." RCW 71.09.090(1)(b). Once either DSHS or the committed person has proposed an LRA placement, the trial court must order a conditional release hearing within 45 days. RCW 71.09.090(1)(b).

Second, subsection of RCW 71.09.090(2)(a) provides, "Nothing contained in this chapter shall prohibit the person from otherwise petitioning the court for conditional release to a less restrictive alternative . . . without the secretary's approval." The subsection then details a requirement that the secretary must provide a committed person with annual written notice of their "right to petition the court for conditional release to a less restrictive alternative . . . over the secretary's objection." RCW 71.09.090(2)(a). Such notice must include "a waiver of rights" and, if the committed person does not "affirmatively waive the right to petition," the trial court must set a show cause hearing to determine whether a conditional release trial is warranted. RCW 71.09.090(2)(a).

Jazper asserts that RCW 71.09.090(2)(a) gave her the right to waive the right to pursue a petition for conditional release under subsection (1)(b) and instead petition for conditional release pursuant to subsection (2)(a) for a placement different than that proposed by DSHS.

Jazper relies on the language in subsection (2)(a) that states, "[n]othing contained in this chapter shall prohibit the person from otherwise petitioning the court for conditional release to a

10

less restrictive alternative . . . without the secretary's approval." In particular, Jazper relies heavily on this subsection's use of the term "nothing." Br. of Appellant at 15. However, words in a statute "'must be read in the context of the statute in which they appear, not in isolation or subject to all possible meanings found in a dictionary.'" *Citizens All. for Prop. Rts. Legal Fund v. San Juan County*, 184 Wn.2d 428, 437, 359 P.3d 753 (2015) (quoting *State v. Lilyblad*, 163 Wn.2d 1, 9, 177 P.3d 686 (2008)). Additionally, we "read statutory provisions together and construe the statute as a whole." *Hous. Auth. v. Knight*, 4 Wn.3d 324, 332, 563 P.3d 1058 (2025).

Reading the text of RCW 71.09.090(2)(a) in context with the entirety of RCW 71.09.090, the statutory language does not support Jazper's reading of the statute. Instead, the plain language of (2)(a) is unambiguous that petitioning under (2)(a) for a conditional release to an LRA is available only when the committed person seeks to petition for a conditional release without the secretary's approval.

"We assume the legislature means exactly what it says." *Martin*, 163 Wn.2d at 508. The very statement Jazper relies on to assert that she had an independent right to petition separately from subsection (1)(b) states that a committed person may not be prohibited from "*otherwise petitioning* the court for conditional release to a less restrictive alternative . . . *without the secretary's approval*." RCW 71.09.090(2)(a) (alterations added).

This statutory language shows that subsection (2)(a) is an alternative pathway for petitioning for conditional release that is available only when the committed person is "without the secretary's approval." The legislature's use of the term "otherwise" as a limit to petitions raised under the subsection signifies a distinct circumstance when the subsection is available and

11

the phrase "without the secretary's approval" clarifies when that different circumstance arises. *See* WEBSTER'S THIRD NEW INT'L DICTIONARY 1598 (2002) (defining "otherwise" as "different" or "under different circumstances"); BLACK'S LAW DICTIONARY 1325 (12th ed. 2024) (similarly defining "otherwise" to mean "[i]n a different way" or "[i]n other conditions or circumstances").

While Jazper contends that a committed person can always petition for conditional release under subsection (2)(a) and "regardless of whether the [s]ecretary has authorized [a petition]," such a reading is inconsistent with the statute's explicit use of "otherwise" and "without." Reply Br. of Appellant at 2. Adopting Jazper's reading of the subsection would ignore the legislature's use of "otherwise," which indicates that petitioning under the subsection is distinct from the only other avenue of petitioning discussed in RCW 71.09.090—petitioning with the secretary's approval under subsection (1)(b). If the legislature intended for petitions under subsection (2)(a) to be unqualified and available regardless of whether the committed person had the secretary's approval, it did not need to include express terms distinguishing and limiting this avenue for petitions. *See e.g.* RCW 10.77.595 ("Nothing contained in this chapter shall prohibit the patient from petitioning the court for release or conditional release from the institution in which he or she is committed.").

The legislature used the limiting phrase "without the secretary's approval" as opposed to using a boundless term such as "regardless." Ignoring the legislature's cabining of petitions filed under subsection (2)(a) to circumstances where it is filed "without the secretary's approval," as opposed to "regardless" of the secretary's approval, would render the legislature's express terms superfluous. In interpreting a statute, we must not "'simply ignore' express terms" and must aim to not make any "'clause, sentence, or word . . . superfluous, void, or insignificant.'" *Ralph v.*

12

*Dep't of Nat. Res.*, 182 Wn.2d 242, 248, 343 P.3d 342 (2014) (quoting *In re Parentage of J.M.K.*, 151 Wn.2d 359, 367, 89 P.3d 217 (2004) and *State ex. rel. Baisden v. Preston*, 151 Wn. 175, 177, 275 P. 81 (1929)). Moreover, we must strictly construe chapter 71.09 RCW, and reading subsection (2)(a) as creating a pathway for petitioning for conditional release when the committed person is without the secretary's approval is the more narrow, restrictive reading. *See Hawkins*, 169 Wn.2d at 801.

Jazper relies on *In re Detention of Brock*, 183 Wn. App. 319, 333 P.3d 494 (2014), to argue that a committed person may waive their right to file a petition under subsection (1)(b). In *Brock*, Division One of this court considered whether a committed person may enter into an agreement with the State to waive their right to petition for a trial for a designated period of time on the issue of release. 183 Wn. App. at 325. The court held that subsection (1)'s requirement that DSHS must "authorize" a person to petition did not mean that the filing of a petition is mandatory nor up to DSHS, but instead the decision to file a petition is on the SVP.[4] *Brock*, 183 Wn. App. at 326 ("the choice appears to lie with the SVP.").

Brock contended that subsection (2)(a) contained a right to waive the right to petition, but the court expressly disagreed that the waiver of a right to petition under subsection (2)(a) applied to subsection (1). *See Brock*, 183 Wn. App. at 327 ("[S]ubsection [1] makes no mention of notice of the right to file a petition or of waiver because the favorable annual review and the mandatory authorization to file a petition is sufficient notice. And the question of whether to file

---

[4] The statute at issue in *Brock* was a prior version of RCW 71.09.090; however, the language around DSHS authorizing the filing of a petition in subsection (1) and the waiver language contained in subsection (2)(a) is substantively the same to that in the current version of the statute. *See* Former RCW 71.09.090(1), (2)(a) (2018).

a petition in light of a favorable annual review is not one of waiver, but one of choice that lies with the committed person.").

Importantly, the *Brock* court did not hold that a committed person may waive the right to petition under subsection (1)(b) and, instead, pursue a petition under subsection (2)(a). Further, it observed that subsection (2)(a) concerns petitions when DSHS does not grant approval through the annual review process. *Brock*, 183 Wn. App. at 327 ("Subsection (2)(a) specifically addresses notice of and waiver of the right to file a petition *over DSHS's objection*. Notice of the right to file a petition under this circumstance is necessary because otherwise a committed person might reasonably believe that an unfavorable annual review precluded a petition for any type of release even though it does not."). Jazper's reliance on *Brock* is misplaced.

Jazper's contention that she could waive petitioning under subsection (1)(b) is not supported by the plain language of RCW 71.09.090. Subsection (2)(a) provides that a committed person may "affirmatively waive the right to petition," but subsection (1)(b) provides no similar language indicating that a committed person may waive their right to petition with the secretary's authorization and then seek a petition under subsection (2)(a). To be sure, nothing in subsection (1)(b) requires a committed person to petition for conditional release. The mere fact that a committed person has a choice to petition for a conditional release under (2)(a), does not mean that they may select petitioning under either subsection (1)(b) or subsection (2)(a) when the secretary has authorized the person to petition for conditional release. Rather, the plain language of the statute shows that subsection (1)(b) allows for a committed person to file a petition for conditional release when the secretary has authorized such a petition and subsection (2)(a) allows for a committed person to file a petition for conditional release when there is no authorization to

14

file such a petition from the secretary. Jazper's reading of the statute is contrary to the plain language of subsections (1)(b) and (2)(a).

Next, Jazper appears to assert that, because DSHS did not agree with Jazper's preferred placement, Jazper did not have "the secretary's approval" and, thus, could petition for an LRA based on her preferred placement under subsection (2)(a).[5]

For Jazper's reading of the statute to be supported by the plain language of the statute, we would have to ignore the legislature's specific delineation of "petitions" versus "placements" in the chapter. Jazper essentially argues that, because she sought a different placement than that identified by DSHS, she had a right to waive petitioning with DSHS's proposed placement and instead pursue her own petition "without the secretary's approval" by proposing her own preferred LRA placement. However, under both subsection (1)(b) and (2)(a), the question of the LRA *placement* is an issue that does not arise until *after* a petition is filed. *See* RCW 71.09.090(1)(b) ("*Upon receipt of the petition*, the court shall order the department to identify a less restrictive alternative placement that satisfies RCW 71.09.092 (1) through (4).") (emphasis added), (2)(b-c) (questions of placement arising at or after a show cause hearing). This sequence and distinction between a petition and a placement is consistent with reading subsection (2)(a) as providing an avenue for petitioning for a conditional release when DSHS does not agree that any conditional release is warranted, not an avenue for petitioning when a committed person wants to seek a specific placement in an LRA.

---

[5] *See* Wash. Ct. of Appeals oral argument, *In re Det. of Abbe*, No. 59123-5-II (Jan. 30, 2026), at 4 min., 23 sec., *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/division-2-court-of-appeals-2026011009/?eventID=2026011009.

Here, the secretary's designee authorized Jazper to petition for conditional release to an LRA under RCW 71.09.090(1)(b). After Jazper submitted a petition and the trial court ordered DSHS to propose a statutorily satisfactory LRA, DSHS identified an LRA placement at the SCTF within 90 days of the court's order. At that point, with an LRA placement before the court, the trial court was mandated to set a conditional release trial. RCW 71.09.090(1)(b). Pursuing a petition for conditional release under subsection (2)(a) was unavailable to Jazper because her *petition* was not "without the secretary's approval." RCW 71.09.090(2)(a).

Considering RCW 71.09.090's plain language, we hold that when the committed person has the secretary designee's authorization to petition for an LRA, the committed person's petition for conditional release proceeds under subsection (1)(b).[6] Such was the case here; thus, the trial court did not err in concluding that Jazper's conditional release petition could only proceed on DSHS's proposed placement and under subsection (1)(b).[7]

---

[6] In a Statement of Additional Authority, Jazper argues that a recently proposed but ultimately rejected bill would have restricted a committed person's ability to propose their own LRA placement once granted authorization by the secretary to petition for conditional release. At 1-3 (citing to HB 1133 §§ 8-9). But, "when the Legislature rejects a proposed amendment [to a statute] . . . , we will not speculate as to the reason for the rejection." *Spokane County Health Dist. v. Brockett*, 120 Wn.2d 140, 153, 839 P.2d 324 (1992); *see also State v. Cronin*, 130 Wn.2d 392, 400, 923 P.2d 694 (1996) ("[W]e are loathe to ascribe any meaning to the Legislature's failure to pass a bill into law."). Accordingly, the unpassed legislation reveals little about the legislature intent, and we decline to ascribe any meaning to it.

[7] To the extent that Jazper argues that she had a constitutional right to petition based on her proposed LRA placement, her argument fails. *See* Reply Br. at 7. To support Jazper's claim that she had a liberty interest in the "particular outcome" of trial on her proposed LRA placement, Jazper relies solely on *In re Det. of Bergen*, 146 Wn. App. 515, 195 P.3d 529 (2008). Br. of Appellant at 19; Reply Br. at 7. But Jazper misconstrues *Bergen*'s holding. *Bergen* held that, because RCW 71.09.090 dictated "a particular outcome based on particular facts" for a committed person petitioning for an LRA, the statutory provisions "create a [protected] liberty interest in a conditional release to an LRA." *Bergen*, 146 Wn. App. at 527. As the court explained, "laws that dictate a particular outcome based on particular facts can create liberty

16

II. Summary Judgment & Conditional Release Proceedings

Jazper argues that the trial court erred in granting the State's summary judgment motion.

Jazper asserts that CR 56 is inconsistent with conditional releases proceedings under chapter

71.09 RCW and, thus, was inapplicable. Additionally, Jazper claims that CR 56 did not

authorize the State's requested remedy because the State moved for summary judgment in

Jazper's favor. Alternatively, Jazper claims that the trial court should have continued the

summary judgment proceedings due to incomplete discovery. We address each in turn below.

A.      *Under These Circumstances, Summary Judgment Could Apply*

The civil rules "govern the procedure in the superior court in all suits of a civil nature,"

except to the extent that CR 81 applies. CR 1. CR 81(a) provides that the civil rules govern all

civil proceedings "[e]xcept where inconsistent with rules or statutes applicable to special

proceedings." Although chapter 71.09 RCW is civil in nature, proceedings under the chapter are

special proceedings within the meaning of CR 81. *In re Det. of Cherry*, 166 Wn. App. 70, 74,

271 P.3d 259 (2012). Accordingly, we must address whether CR 56, the civil rule governing

summary judgment procedures, is inconsistent with provisions for special proceedings under

chapter 71.09 RCW. *See In re Det. of Williams*, 147 Wn.2d 476, 55 P.3d 597 (2002).

Jazper argues that CR 56 could not apply below because chapter 71.09 RCW only

provides for one circumstance when the State can seek summary judgment in conditional release

interests, but laws granting a significant degree of discretion cannot." *Id*. at 525. While *Bergen*
held that a committed person has a liberty interest in conditional release to an LRA, *Bergen* did
not hold that that interest guarantees a right to an evidentiary trial for Jazper's proposed LRA
when she has the secretary's approval to petition. And Jazper cites to no other authorities
supporting her argument. *See DeHeer v. Seattle Post-Intelligencer*, 60 Wn.2d 122, 126, 372
P.2d 193 (1962) ("[T]he court is not required to search out authorities, but may assume that
counsel, after diligent search, has found none.")

proceedings and, below, the circumstances were different. Jazper asserts that the State's motion for summary judgment was inconsistent with RCW 71.09.094(1) because the State did not argue that the plan violated RCW 71.09.092 and, thus, was precluded by CR 81.[8] We disagree.

RCW 71.09.094(1) provides:

> Upon the conclusion of the evidence in a hearing held pursuant to RCW 71.09.090 or through summary judgment proceedings prior to such a hearing, if the court finds that there is no legally sufficient evidentiary basis for a reasonable jury to find that the conditions set forth in RCW 71.09.092 have been met, the court shall grant a motion by the state for a judgment as a matter of law on the issue of conditional release to a less restrictive alternative.

Before this provision was amended in 2001, RCW 71.09.094(1) did not include the phrase "or through summary judgment proceedings to such a hearing" but it did contain the language regarding granting a motion for judgment as a matter of law. LAWS OF 2001, ch. 286, § 11.

Importantly, before the legislature added the summary judgment language, an opinion from our court, *In re Detention of Mathers*, 100 Wn. App. 336, 341, 998 P.2d 336 (2000), considered whether a summary judgment procedure was appropriate in RCW 71.09.090 proceedings and held that it was appropriate. In *Mathers*, a trial for conditional release to an LRA was set under RCW 71.09.090(2). 100 Wn. App. at 337-38 & n. 2. But before trial, neither the State nor Mathers' expert recommended an LRA where Mathers would be housed in the community instead of in continued confinement at the Special Commitment Center (SCC). *Id.* at 338. However, Mathers' expert had recommended for Mathers to receive treatment in the

---

[8] Preliminarily, the State argues that Jazper cannot raise this argument because she failed to mention "CR 81, special proceedings, or a 'conflict'" between the civil rules and chapter 71.09 RCW below. Br. of Resp't at 51. But, as the State acknowledges, Jazper argued below that the State was not entitled to summary judgment beyond that provided in RCW 71.09.094. Br. of Resp't at 51. Jazper's arguments sufficiently preserved her argument for review.

community while remaining confined at the SCC. *Id*. The State moved for summary judgment,

arguing that no genuine issue of material fact existed as to whether Mathers should be released to

an LRA from confinement, and the trial court granted the motion. *Id*.

On appeal, the State asserted that Mathers' plan was not allowed under chapter 71.09

RCW.[9] *Mathers*, 100 Wn. App. at 338. Our court agreed, reasoning that neither the plain

language of RCW 71.09.090(2) nor RCW 71.09.092 contemplated an LRA where the committed

person was confined at the SCC but conditionally released to the community solely for

treatment. *Mathers*, 100 Wn. App. at 338-39. Specifically related to RCW 71.09.092, our court

noted that, before entering an order allowing an LRA, the statute required a trial court to make

certain findings that clearly contemplated housing in the community, not at the SCC. *Mathers*,

100 Wn. App. at 339.

Mathers argued that summary judgment was inappropriate as applied to chapter 71.09

RCW proceedings. *Mathers*, 100 Wn. App. at 339. Considering CR 81(a), our court held that

the summary judgment procedure was appropriate "in an RCW 71.09.090 hearing." *Mathers*,

100 Wn. App. at 341. In its reasoning, the court noted:

> RCW 71.09.094 allows the trial court to test the legal sufficiency of the evidence
> at the conclusion of a less restrictive alternative hearing. If "there is no legally
> sufficient evidentiary basis," the court "shall grant a motion by the state for a
> judgment as a matter of law on the issue of conditional release to a less restrictive
> alternative." RCW 71.09.094(1). If the court can test the legal sufficiency of the
> evidence and take the case from the jury after both sides have presented evidence,
> it can surely test the sufficiency of the evidence before the hearing.

*Id.* at 340-41.

---

[9] From the facts contained in the opinion, it is unclear if this was the same assertion the State
made below while moving for summary judgment.

Jazper contends that her reading of RCW 71.09.094(1) is not inconsistent with *Mathers* given that *Mathers* preceded the amendment of the statute. She additionally argues that, by the legislature's inclusion of a specific summary judgment circumstance, it intentionally excluded all other avenues for summary judgment for the State. In support, Jazper relies heavily on *Williams* where the Supreme Court applied the *expressio unius est exclusion alterious* canon of construction to infer that the legislature expressly provided for post-commitment evaluations of an SVP, but not pretrial discovery evaluations. 147 Wn.2d at 491 ("Under expressio unius est exclusio alterius, a canon of statutory construction, to express one thing in a statute implies the exclusion of the other" and "[o]missions are deemed to be exclusions.").

In response, the State acknowledges that RCW 71.09.094(1) mentions only one avenue for summary judgment but asserts that the amendment, instead of intending to limit summary judgment avenues from the State, intended to expand "the State's authority to avoid useless trials." Am. Br. of Resp't at 54. The State contends that, before the amendment, the State could only request judgment as a matter of law following the presentation of evidence. *See* LAWS OF 2001, ch. 286, § 11.

We conclude that the State's argument is more persuasive. The legislative amendment to RCW 71.09.094(1), read in context with the timing and context of *Mathers*, more likely indicates an intent to clarify the availability of summary judgment in conditional release proceedings when "there is no legally sufficient evidentiary basis for a reasonable jury to find that the [requirements of RCW 71.09.092] have been met." The language does not indicate an intent to exclude all other possible instances in which judgment as a matter of law may be appropriate and available to parties.

At a conditional release trial where the issue is whether the committed person should be conditionally released to an LRA, the State has the burden to prove beyond a reasonable doubt that any proposed LRA is either not in the best interest of the committed person or does not include conditions to adequately protect the community. RCW 71.09.090(3)(d). As this court stated in *Cherry*, "[t]he purpose of the hearing that follows a DSHS-authorized petition . . . is, presumably, to protect the prosecuting agency's ability to challenge that release." 166 Wn. App. 70 at 76 (citing *In re Det. of Ambers*, 160 Wn.2d 543, 548-49, 158 P.3d 1144 (2007)); *see also* RCW 71.09.090.

When the State concludes it cannot meet its burden at trial, allowing the State to move for summary judgment prior to an evidentiary trial is consistent with the legislature's expressed "substantial" interest "in avoiding costly and unnecessary trials" as well as the State's ethical obligation to stipulate to judgment as a matter of law in the petitioner's favor. *See* LAWS OF 2018, ch. 131, § 1(4) ("The legislature finds that the state's interest in avoiding costly and unnecessary trials is substantial."); Rules of Professional Conduct 3.8(a) (a prosecutor shall refrain from prosecuting a charge the prosecutor knows is not supported by probable cause).

Moreover, if the trial court here in Jazper's matter denied the State's motion and the case proceeded to trial with the State's expert witness' anticipated testimony, it is unclear what other result would have occurred other than what resulted here: concluding that Jazper should be conditionally released to DSHS's proposed LRA. Delaying that result until after trial and forcing the State to nevertheless prosecute the case when it did not believe it could meet its burden would create an absurd result. We generally construe statutes "to avoid absurd results." *In re Det. of C.A.A.*, 31 Wn. App. 2d 816, 833, 553 P.3d 88 (2024). And, although the plain

21

language of RCW 71.09.094(1) only discusses a particular summary judgment circumstance, appellate courts "may excuse 'inept wording' if it creates an absurd or obviously unintended result." *Martin*, 163 Wn.2d at 514 (quoting *State v. Burke*, 92 Wn.2d 474, 478, 598 P.2d 395 (1979)).

We hold that, under these circumstances, the summary judgment procedure was not inconsistent with chapter 71.09 RCW conditional release proceedings and, thus, was appropriate.

B.      *The State Could Move for Summary Judgment Even Though the Sought After Remedy Favored Jazper's Petition for an LRA*

Relying on the plain language of CR 56, Jazper argues that summary judgment did not authorize the State's sought after remedy because granting the motion in favor of conditional release was not in the State's favor. We disagree.

CR 56(b) provides that the "[d]efending [p]arty . . . may move . . . for a summary judgment in such party's favor." Additionally, CR 56(c) states that summary judgment shall be rendered "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."

Jazper asserts that the phrase "in such party's favor" means that the State's motion was not a proper motion for summary judgment because it was not seeking a remedy in its favor or arguing that the State was entitled to judgment as a matter of law. The State responds that this construction is "too narrow and adversarial," and it notes that the summary judgment ruling furthered the State's objectives by "advanc[ing] [Jazper's] treatment needs, protect[ing] the community, and avoid[ing] a useless trial." Am. Br. of Resp't at 45, 47. We conclude the

State's argument is more persuasive, especially considering that the civil rules themselves instruct us to construe and administer the rules "to secure the just, speedy, and inexpensive determination of every action." CR 1. Accordingly, Jazper's argument fails.

C.      *Jazper Fails to Show That the Trial Court Alternatively Should Have Granted a Continuance*

Jazper argues that, instead of granting the State's summary judgment motion, the trial court should have granted her a continuance so as to complete additional discovery. Br. of Appellant at 27. We disagree.

Under CR 56(f), "should it appear from the affidavits of a party opposing the motion that, for reasons stated, the party cannot present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." We review for an abuse of discretion a trial court's decision to deny a motion for a continuance under CR 56(f). *Old City Hall LLC v. Pierce County AIDS Found.*, 181 Wn. App. 1, 15, 329 P.3d 83 (2014). A trial court does not abuse its discretion in denying such a motion if:

> (1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact.

*Id.* at 16 (quoting *Turner v. Kohler*, 54 Wn. App. 688, 693, 775 P.2d 474 (1989)).

Here, Jazper's counsel did not expressly request a continuance of the summary judgment proceeding. Thus, the trial court could not have abused its discretion when it never was asked to consider a continuance request. Even when Jazper's counsel mentioned CR 56(f) at the

summary judgment hearing, counsel did not expressly request a continuance, file a motion to continue, or request something different than a denial of the State's motion. *See* RP (Dec. 13, 2023) at 93. On these facts, we hold that Jazper fails to show that the trial court abused its discretion.

## CONCLUSION

We hold that, pursuant to the plain language of RCW 71.09.090, a committed person's petition for conditional release proceeds under subsection (1)(b) when the person has the secretary designee's authorization to petition for a conditional release to an LRA. Additionally, we hold that (1) CR 56 was applicable under these circumstances, (2) the State's sought after remedy did not render CR 56 inapplicable, and (3) Jazper fails to show that a continuance should have been granted below. Accordingly, we affirm.

Che, J.

We concur:

Maxa, P.J.

Lee, J.